**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CLARENCE REED JENKINS, Jr.,

     Petitioner,           Case No. 2:20-CV-12585
                           HONORABLE DENISE PAGE HOOD

v.

MINDY BRAMAN,

     Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

     Clarence Reed Jenkins, Jr., ("petitioner"), confined at the Richard A. Handlon Correctional Facility in Ionia, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner challenges his conviction for torture, Mich. Comp. Laws § 750.85, third-offense domestic violence, Mich. Comp. Laws § 750.81(2) and (4), two counts of assault with a dangerous weapon, Mich. Comp. Laws § 750.82, assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, failure to comply with Sex Offender Registration Act (SORA) requirements, Mich. Comp. Laws § 28.279, and being a fourth-offense

1

habitual offender, Mich. Comp. Laws § 769.12(1)(a). For the reasons stated

below, the petition for a writ of habeas corpus is DENIED.

## I. BACKGROUND

With the exception of the SORA conviction, petitioner was convicted of

the above charges following a jury trial in the St. Clair County Circuit Court.

Petitioner then pleaded guilty to the SORA charge. This Court recites

verbatim the relevant facts relied upon by the Michigan Court of Appeals,

which are presumed correct on habeas review pursuant to 28 U.S.C. §

2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant and the victim began dating in August 2015 and
> began living together in the victim's apartment in early 2016.
> During trial, the victim recounted several instances of verbal and
> physical abuse perpetrated by defendant at various times
> throughout their relationship. The present charges, however,
> stem from an instance of domestic violence that occurred on April
> 11, 2016. The victim testified that she was sleeping on the couch
> in the living room that evening when defendant woke her to ask
> who was sending her text messages. When the victim replied
> that no one was texting her, defendant told her not to lie, began
> chugging liquor, and warned her that she had better run because
> "the [d]evil's in the house." The victim testified that, although she
> began to cry and begged defendant not to hit her, he repeatedly
> punched her in the face, knocking her backwards onto the couch
> with each blow. Defendant continued to hit the victim even after
> he shook her awake when she began to lose consciousness. As
> he was hitting the victim, defendant smoked a cigarette, which
> he put out on the victim's neck, side, and "down [her] pants" when
> he did not like her answer to one of his questions. When the
> victim continued to insist that no one had texted her, defendant
> picked up a table and swung it at the victim, hitting her and the
> couch with such force that the top panel of the table broke away

from the frame. Defendant then began to choke the victim and flung her into a wall.

The victim testified that defendant then ordered her upstairs into the bathroom, where he forced her to drink his urine out of the toilet after she refused to admit to having a sexual relationship with her brother. When the victim nearly vomited, defendant threatened that she would have to drink the contents of the toilet until there was no water left. In the hopes that defendant would stop the abuse, the victim falsely admitted that she had sex with her brother. In response, defendant urinated on her head. The victim testified that defendant then broke the shower curtain rod, held it like a baseball bat, and threatened to swing it at her if she did not answer his questions. Defendant swung the rod close to the victim several times before eventually striking her with it on her side. As the victim lay on the floor crying, defendant kicked her on her side. He ordered her to take a shower because she smelled like urine and then ordered her into the bedroom, where he became calmer. However, after asking the victim another question, defendant became agitated afresh and began choking her. He then had sex with her and fell asleep. The victim testified that the attack had lasted from approximately 8:00 p.m. on April 11, 2016, until the sky began to lighten early the following morning. The victim further recalled that, throughout the entire night, defendant repeatedly threatened her, "You're going to die tonight, bitch."

After defendant fell asleep, the victim also slept and awoke in the afternoon of April 12, 2016, to defendant applying ointment to her injuries. Defendant went downstairs to answer the front door for two maintenance men; although the victim contemplated escaping at that time, she feared that it was not yet safe. Defendant returned to the bedroom, and he and the victim talked and watched a movie. The victim eventually told defendant that she was going downstairs to wash the dishes, as the sink was near the front door. Defendant followed her and paced between the kitchen and living room while she washed the dishes. The victim stated that she deliberately clattered the dishes loudly to mask any sound when she unlocked and escaped through the front door while defendant was in the living room. The victim,

3

barefoot and wearing only a t-shirt and shorts, ran to her mother's apartment, which was located in a building adjacent to the victim's. Upon arriving, the victim immediately vomited and told her brother Marcus Jamison to lock the door. Jamison testified that he observed the victim with a black eye and spitting blood into a trash can. The victim's other brother Relashen Howard recalled that the victim was shaking when she came into his room without her shoes or coat and that her face and body were covered in marks. The victim called 911, and the police arrested defendant on April 13, 2016.

*People v. Jenkins*, No. 339161, 2019 WL 1494632, at *1–2 (Mich. Ct. App.

Apr. 4, 2019); *lv. den.* 504 Mich. 959, 932 N.W.2d 603 (2019).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Jenkins' constitutional right to a fair trial and due process was violated when the trial court abused its discretion by granting the prosecutor's motion to amend the information to add assault with intent to do great bodily harm less than murder when the proofs did not support the amendment.

II. Jenkins' constitutional due process right was violated when the evidence was legally insufficient to prove beyond a reasonable doubt that the defendant committed torture or assault with intent to do great bodily harm less than murder.

III. The trial court abused its discretion and violated the defendant's Fifth and Fourteenth Amendments rights to due process when it scored offense variables 4, 7, and 8 incorrectly where the record did not support the allegations.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that

5

a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

## III. DISCUSSION

### A. Claim # 1. The amended information claim.

Petitioner first argues that his rights were violated when the prosecutor was permitted to amend the information to add the assault with intent to do great bodily harm charge. Petitioner contends that the victim's testimony during the preliminary examination was insufficient to establish the level of intent necessary to support a finding of probable cause on this charge and that the district court erred in allowing the prosecutor to add this charge and to bind petitioner over for trial on this added count.

Petitioner's improper bindover charge does not entitle him to relief. A prior judicial hearing is not a prerequisite to prosecution by information. *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975). There is no federal constitutional right to a preliminary examination. *United States v. Mulligan*, 520 F.2d 1327, 1329 (6th Cir. 1975); *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir. 1965). Petitioner's claim that there was insufficient evidence presented at his preliminary examination to bind him over for trial on the assault with intent to do great bodily harm charge only raises a matter of

6

state law and procedure that cannot form a basis for federal habeas relief. *See Tegeler v. Renico,* 253 F. App'x 521, 525-26 (6th Cir. 2007).

In addition, a guilty verdict renders harmless any error in the charging decision. *See United States v. Mechanik,* 475 U.S. 66, 73 (1986). Any insufficiency of evidence at petitioner's preliminary examination with respect to the assault with intent to do great bodily harm charge would be harmless error in light of petitioner's subsequent conviction. *See Redmond v. Worthinton,* 878 F. Supp. 2d 822, 844 (E.D. Mich. 2012).

Petitioner has also not shown that he was prejudiced by the amendment of the information to add the assault with intent to do great bodily harm charge.

A state criminal defendant has a due process right to be informed of the nature of the accusations against him. *Lucas v. O'Dea,* 179 F.3d 412, 417 (6th Cir. 1999). Notice and opportunity to defend against criminal charges as guaranteed by the Sixth Amendment to the United States Constitution are an integral part of the due process protected by the Fourteenth Amendment and therefore apply to state prosecutions. *Cole v. Arkansas,* 333 U.S. 196, 201 (1948); *In Re Oliver,* 333 U.S. 257, 273 (1948). "The due process clause of the Fourteenth Amendment mandates that whatever charging method the state employs must give the criminal

7

defendant fair notice of the charges against him to permit adequate preparation of his defense." *Olsen v. McFaul,* 843 F.2d 918, 930 (6th Cir. 1988).

An accused's constitutional right to notice of the criminal charge or charges brought against him can be satisfied by means other than an arraignment, such as a preliminary examination. *See Stevenson v. Scutt*, 531 F. App'x 576, 580 (6th Cir. 2013)(noting that victim's testimony from the preliminary examination provided petitioner with notice of the time frame of the assaults). The victim's testimony from the preliminary examination clearly put petitioner on notice as to the nature of the assault with intent to do great bodily harm charge.

Moreover, petitioner was convicted by a jury after a trial. The Ninth Circuit has observed that neither *Cole v. Arkansas, supra,* nor *In re Oliver, supra,* "foreclose the premise that constitutionally adequate notice may come from evidence presented at trial." *See Troches v. Terhune,* 74 F. App'x 736, 737 (9th Cir. 2003). The testimony of the victim and other witnesses at trial was sufficient to afford petitioner adequate notice of the charges against him. *See Bruce v. Welsh*, 572 F. App'x 325, 331 (6th Cir. 2014). Petitioner is not entitled to habeas relief on his first claim.

8

**B. Claim # 2.  The sufficiency of evidence claim.**

Petitioner next claims that there was insufficient evidence to support his convictions for assault with intent to do great bodily harm and torture.

The Supreme Court has indicated that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's adjudication of that claim.  Instead, a federal

court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner initially argues that there was insufficient evidence to convict him of assault with intent to do great bodily harm.

Under Michigan law, the elements of assault with intent to do great bodily harm less than murder are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm *less than murder*." *Raybon v. United States*, 867 F.3d 625, 632 (6th Cir. 2017)(quoting *People v. Brown*, 267 Mich. App. 141, 703 N.W.2d 230, 236 (2005))(emphasis original). Assault with intent to do great bodily harm is a specific intent crime which requires "an intent to do serious

injury of an aggravated nature," but an actual injury need not occur. *Id.* (internal citations omitted).

The Michigan Court of Appeals rejected petitioner's claim as follows:

Viewed in the light most favorable to the prosecution, the evidence in the present case demonstrates that defendant savagely beat and terrorized the victim over the course of many hours. He repeatedly punched the victim in her face with such force that she was thrown backwards onto the couch and began to lose consciousness. He picked up and swung a table at her, hitting her in her side, then choked her and flung her into a wall. Once in the upstairs bathroom, defendant swung at and struck the victim in her side with a shower rod and then kicked her in her side as she lay on the floor crying. In the bedroom, defendant again began choking the victim. Throughout the ordeal, defendant threatened the victim by stating, "You're going to die tonight, bitch." Especially in context of their significant difference in size and the fact that the victim was recovering from a recent caesarian section surgery, the amount of force used by defendant in the attack could have led a reasonable juror to infer that he intended to inflict serious physical harm.

*People v. Jenkins*, 2019 WL 1494632, at *5.

The Michigan Court of Appeals' decision was reasonable, precluding habeas relief. The severe beating that petitioner inflicted upon the victim over the course of several hours, his use of a table and a shower rod to hit the victim, the fact that petitioner at one point choked the victim and threw her into a wall, that petitioner later kicked the victim while she was on the floor, and his threat that she was going to die was sufficient evidence for a

11

rational trier of fact to conclude that petitioner intended to inflict great bodily harm on the victim.

Petitioner also claims that there was insufficient evidence to support his torture conviction.

Under Michigan law, a person is guilty of torture if the person "with the intent to cause cruel or extreme physical or mental pain and suffering, inflicts great bodily injury or severe mental pain or suffering upon another person within his or her custody or physical control." *See Galvan v. Stewart*, 705 F. App'x 392, 398 (6th Cir. 2017)(citing Mich. Comp. Laws § 750.85). "Cruel" is defined in the torture statute as "brutal, inhuman, sadistic, or that which torments." Mich. Comp. Laws § 750.85(2)(a).

"Great bodily injury" is defined as either:

(i)    Serious impairment of a body function as that term is defined in section 58c of the Michigan vehicle code, 1949 PA 300, MCL 257.58c.

(ii )   One or more of the following conditions: internal injury, poisoning, serious burns or scalding, severe cuts, or multiple puncture wounds.

Mich. Comp. Laws § 750.85(2)(c).

Mich. Comp. Laws § 750.85(2)(d) states that:

Severe mental pain of suffering is defined as a mental injury that results in a substantial alteration of mental functioning that is manifested in a visibly demonstrable manner caused by or resulting from any of the following:

    (i)    The intentional infliction or threatened infliction of great bodily injury.

    (ii)    The administration or application, or threatened administration or application, of mind-altering substances or other procedures calculated to disrupt the senses or the personality.

    (iii)    The threat of imminent death.

    (iv)    The threat that another person will imminently be subjected to death, great bodily injury, or the administration or application of mind-altering substances or other procedures calculated to disrupt the senses or personality.

The Michigan Court of Appeals rejected claim two at great length:

In the present case, the evidence sufficiently demonstrates that defendant forcibly confined the victim insofar as he used both force and threat of force to prevent her from escaping the apartment. The victim testified multiple times that she obeyed defendant's orders and did not attempt to run away because she was terrified of further endangering herself. She was unable to call for help because defendant had taken her cell phone. The victim also explained that she did not attempt to escape when the maintenance men arrived at the apartment because she was uncertain whether it would be safe. Additionally, she did not attempt to escape through her back door because defendant "would have gotten [her] faster than anything." Even the victim's eventual escape establishes that her fears were well-founded, as defendant not only paced to and from the kitchen to monitor the victim but also arrived at the victim's mother's house only minutes after the victim. Contrary to defendant's argument on appeal, the fact that the victim did not attempt an earlier escape does not demonstrate that she remained inside the apartment of her own accord rather than because she was forcibly confined. The evidence that the victim was under defendant's forcible control was sufficient to support the jury's verdict.

MCL 750.85 also requires actual infliction of either great bodily injury or severe mental pain or suffering upon the victim. The prosecution does not contend that the victim suffered great bodily injury but rather severe mental pain or suffering. The evidence sufficiently supports that, as a result of defendant's attack, the victim suffered "a substantial alteration of mental functioning that [was] manifested in a visibly demonstrable manner." See MCL 750.85(2)(d). In addition to her severe emotional distress arising from the physical violence and defendant's threats that she was "going to die tonight," the victim sustained further humiliation and torment when defendant forced her to drink his urine, even when she was about to vomit, and urinated on her head. The victim's testimony demonstrates that she cried throughout the ordeal and desperately begged defendant to stop. She stated that during the attack she was "terrified," "scared," and "in shock." Although defendant had previously been physically abusive toward her, the victim stated that "[t]his time felt like a nightmare." Both of the victim's brothers testified that the victim was visibly scared, out of breath, and shaking when she arrived at their apartment. Likewise, a responding officer stated that the victim was shaking and in fear. During the victim's testimony at trial, she became distraught, began to cry, and needed to leave the courtroom to calm herself down.

Viewing this evidence in a light most favorable to the prosecution and drawing all inferences in support of the jury's verdict, we conclude that the evidence was sufficient to permit a rational juror to find that the victim suffered severe mental pain and suffering. Accordingly, we conclude that the evidence presented at trial was sufficient to support defendant's torture conviction.

*People v. Jenkins*, 2019 WL 1494632, at *6 (internal footnote omitted).

The Michigan Court of Appeals' rejection of petitioner's sufficiency of evidence claim was reasonable, precluding habeas relief. A rational jury could infer from the evidence that petitioner was guilty of torture based on

the fact that he forcibly confined the victim against her will by using force and the threats of force to keep her in the apartment. The victim clearly suffered severe mental pain and suffering based on the physical violence she endured, petitioner's threat that she was going to die that night, the fact that petitioner forced the victim to drink his urine from the toilet and later urinated on her, and the fact that the victim was emotionally distraught both during and after the ordeal and at trial. Petitioner is not entitled to relief on his second claim.

### C. Claim # 3. The sentencing guidelines claim.

Petitioner alleges that the trial court judge erroneously scored several offense variables (OV) under Michigan's sentencing guidelines. Petitioner also claims that the trial judge violated his Sixth Amendment right to trial by jury by using factors that had not been proven beyond a reasonable doubt or admitted to by petitioner in scoring these offense variables.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is non-cognizable on federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot independently support

habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016). Petitioner had "no state-created interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009).  Petitioner thus "had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004).  Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.*

Petitioner further argues that the trial court judge violated his Sixth Amendment right to a trial by jury by using factors that had not been submitted to a jury and proven beyond a reasonable doubt or admitted to by petitioner when scoring these guidelines variables.

On June 17, 2013, the United States Supreme Court held that any fact that increases the mandatory minimum sentence for a crime is an element of the criminal offense that must be proven beyond a reasonable doubt. *See Alleyne v. United States*, 570 U.S. 99, 103 (2013).  *Alleyne* expands the Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005), in which the U.S. Supreme Court held that any fact that increases or enhances a penalty for a crime beyond the prescribed statutory

maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.    In reaching this conclusion, the Supreme Court overruled *Harris v. United States*, 536 U.S. 545 (2002), which held that only factors that increase the maximum, as opposed to the minimum, sentence must be proven beyond a reasonable doubt to a factfinder. *Alleyne,* 570 U.S. at 106-07.  The Supreme Court, however, indicated that the ruling in *Alleyne* did not mean that every fact influencing judicial discretion in sentencing must be proven to a jury beyond a reasonable doubt. *Id.* at 116.

The Michigan Supreme Court relied on *Alleyne* to hold that Michigan's mandatory sentencing guidelines scheme violates the Sixth Amendment right to a jury trial. *See People v. Lockridge,* 498 Mich. 358, 870 N.W.2d 502 (Mich. 2015).  The Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violated the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the "mandatory minimum" sentence under *Alleyne*." *Lockridge*, 498 Mich. at 364 (emphasis in original).   The Michigan Supreme Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory

17

only. *Id.* 498 Mich. at 391-92 (relying on *Booker*, 543 U.S. at 264-265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

The Sixth Circuit subsequently granted habeas relief on a challenge to Michigan's sentencing guidelines, holding that the United States Supreme Court's decision in *Alleyne* clearly established that Michigan's *mandatory* minimum sentencing scheme was unconstitutional. *Robinson v. Woods*, 901 F.3d 710, 716-18 (6th. Cir.  2018)(emphasis added).  In so ruling, the Sixth Circuit concluded that "[a]t bottom, Michigan's sentencing regime violated *Alleyne's* prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

Petitioner's case is distinguishable from the petitioner's case in *Robinson* because he was sentenced on June 26, 2017 (ECF No. 9-11), after the Michigan Supreme Court in *Lockridge* ruled that Michigan's sentencing guidelines are no longer mandatory, but should only be used in an advisory capacity.

Purely advisory applications of the sentencing guidelines do not violate the Sixth Amendment. *See Booker*, 543 U.S. at 233 ("If the Guidelines as

18

currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.  We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi v. New Jersey*, 530 U.S. at 481-82 (reiterating that "'a sentence imposed by a federal district judge, if *within statutory limits*, is generally not subject to review'")(emphasis added)(quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *United States v. Cook,* 453 F.3d 775, 777 (6th Cir. 2006)(Defendant's sentencing in federal court based on facts other than those rendered in the verdict or admitted by defendant did not violate his Sixth Amendment right to trial by jury, since defendant was sentenced under advisory, rather than mandatory sentencing guidelines).

Petitioner is not entitled to habeas relief because the minimum sentence that he challenges was imposed by the state trial court when it was clear under Michigan law that the trial court must treat as advisory the Michigan guidelines for imposing a minimum sentence. *See e.g. Reign v. Gidley*, 929 F.3d 777, 780-781 (6th Cir. 2019), *reh'g denied* (July 31, 2019)(petitioner not entitled to habeas relief where trial court on a *Lockridge* remand from the Michigan Supreme Court declined to hold another re-

sentencing hearing, after concluding that he would have imposed the same sentence under the now advisory guidelines range).  "After *Lockridge*, a trial court's imposition of a sentence, no matter how it may be guided by the sentencing guidelines, represents an exercise of the court's discretion." *Fitzgerald v. Trierweiler*, No. 1:17-CV-435, 2017 WL 2790710, at *7 (W.D. Mich. June 28, 2017).  Because petitioner was sentenced after the decision in *Lockridge,* the sentencing guidelines were no longer mandatory but advisory, thus, the sentence imposed was an exercise of the judge's discretion. *Id.*  Because the "[f]acts the trial court may have found in support of its exercise of discretion do not implicate the Sixth Amendment," the Michigan courts reasonably rejected petitioner's Sixth Amendment claim. *Id.*

## IV.  CONCLUSION

The Court will deny the petition for a writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.  28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[1]

---

[1] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district

When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  The Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *Id*., at 484.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed in forma pauperis (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002).  Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster*, 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of

---

court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id*.

## V.  ORDER

Based upon the foregoing, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that petitioner will be **GRANTED** leave to appeal *in forma pauperis*.

<u>s/Denise Page Hood</u>
Denise Page Hood
United States District Judge

Dated: March 27, 2024

22